## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

CHARLES SULLIVAN,          )
          )
      **Plaintiff,**     )
**v.**          )     **Civil Action No. 3:17-02347**
          )
TIMOTHY KING, *et al.*,     )
          )
      **Defendants.**    )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendant PrimeCare Medical's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 15), filed on June 7, 2017; and (2) Defendants Western Regional Jail and Timothy King's "Motion to Dismiss" (Document No. 17), filed on June 7, 2017. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 19.) Plaintiff has failed to file a Response to either of the above Motions. Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' above Motions should be granted.

## PROCEDURAL BACKGROUND

On April 14, 2017, Plaintiff, acting *pro se,* filed his Motion to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983.[1]

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Timothy King, Administrator of the Western Regional Jail; (2) Unknown Medical Corp; and (3) Unknown Doctors and Nurses. (Document No. 2.) Plaintiff appears to allege that Defendants acted with negligence and violated his constitutional rights under the Eighth Amendment by failing to provide him with appropriate and necessary medical care. (Id.) Specifically, Plaintiff alleges that he was processed into the Western Regional Jail on February 4, 2017. (Id., p. 5.) Plaintiff states that he "could walk fine" even though his left side was partially paralyzed. (Id.) Plaintiff alleges that on or about February 10, 2017, he developed a "blood infection in the main artery of [his] right leg." (Id.) Plaintiff claims that the infection spread from his groin to the bottom of his foot. (Id.) Plaintiff acknowledges that he was given antibiotics for seven days. (Id.) Plaintiff, however, complains that by the time he was given antibiotics, "the infection had lodged in [his] knee." (Id.) Plaintiff asserts that he has been "released from any medical care except Ibuprofen" and placed in general population. (Id., p. 6.) Plaintiff claims that he is unable to walk and "needs to see an outside doctor." (Id.) As relief, Plaintiff request monetary damages and immediate treatment. (Id.)

By Order entered on April 16, 2015, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue a summons for Timothy King and PrimeCare Medical Inc., and directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaint upon each Defendant. (Document No. 4.) On May 30, 2017, the above civil action was transferred from Judge Eifert to the undersigned for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document No. 12.)

On June 7, 2017, Defendant PrimeCare Medical filed its "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos.

2

15 and 16.) Defendant PrimeCare argues that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 16, pp. 3 – 6.); (2) "Plaintiff's claims neither plead nor meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 6 – 9.); (3) "Plaintiff has failed to comply with the Notice of Claim and Screening Certificate of Merit requirements of the MPLA" (Id., pp. 9 – 11.); and (4) PrimeCare is entitled to good faith qualified immunity" (Id., pp. 11 – 13.).

Also on June 7, 2017, Defendants Western Regional Jail ["WRJ"] and King filed their "Motion to Dismiss" and Memorandum in Support (Document Nos. 17 and 18.) Defendants WRJ and King ["State Defendants"] argue that Plaintiff's claims should be dismissed based on the following: (1) The Eleventh Amendment bars Plaintiff claims (Document No. 18, pp. 3 – 6.); (2) Plaintiff's Complaint fails to state a constitutional claim (Id., pp. 6 – 8.); and (3) Plaintiff failed to exhaust his administrative remedies (Id., pp. 8 – 9.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 8, 2017, advising him of the right to file a response to the Defendants' Motions. (Document No. 19.) After being granted two extensions of time, Plaintiff has failed to file a Response to Defendants' above Motions. (Document Nos. 22 and 25.)

By Order entered on December 8, 2017, the undersigned directed Defendants pursuant to Rule 56(e) to file documentation in support of certain assertions of fact. (Document No. 28.) Specifically, the undersigned determined that Defendant PrimeCare had failed to file documentation supporting their assertion that an orthopedic consult was approved on April 13, 2017, and that medical staff scheduled Plaintiff an appointment with Marshall Orthopedics. (Id.) The undersigned further notified Plaintiff that, to the extent he wished to dispute PrimeCare's assertions of fact regarding his medical treatment, Plaintiff could file documentation or an affidavit

3

disputing such on or before December 29, 2017. (Id.)

On December 12, 2017, Defendant PrimeCare filed its Supplemental Documentation in support of the Motion for Summary Judgment. (Document No. 29.) As Exhibits, PrimeCare attached a copy of Plaintiff's medical records from Marshall Health. (Document No. 29-1.) Plaintiff failed to file a Response to the foregoing.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction,

4

however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

### 1.    **Improper Parties**:

In their Motion to Dismiss, State Defendants argue that Plaintiff's claim against the WRJ must be dismissed because the WRJ is not a "person" under Section 1983. (Document Nos. 17 and 18.) Plaintiff did not file a Response to State Defendants' Motion. It is well recognized that a Section 1983 claim must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983). In Will v. Michigan Dept. of State Police, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983". Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The holding in Will applies not only to suits against the State, but also to suits against "public entities and political subdivisions" that are an "arm or alter ego" of the State. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)(citation omitted). It is well recognized that WRJ is an arm of the State and is not a "person" within the meaning of Section 1983. See Duncan v. Western Regional Jail, 2017 WL 2682088, * 3 (S.D.W.Va. March 19, 2015)(finding that WRJ was "an arm of the State"); Skaggs v. Western Regional Jail, 2014 WL 66645, * 1, 4 (S.D.W.Va. Jan. 8, 2014)(adopting the finding that the WRJ is an arm of the State); Lewis v. Western Regional Jail,

6

2012 WL 3670393, * 5 (S.D.W.Va. July 24, 2012)(finding that WRJ was not a "person" subject to suit under Section 1983); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983). Furthermore, pursuant to the Eleventh Amendment, the power of the federal judiciary does not extend to suits by a citizen against his or her own state. Hans v. Louisiana, 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1980); also see Will, supra, 491 U.S. at 66, 109 S.Ct. at 2309 (Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Kinder v. PrimeCare Med., Inc., 2015 WL 1276748, * 2 (S.D.W.Va. March 19, 2015)(dismissing WRJ based on Eleventh Amendment grounds). Accordingly, the undersigned finds that the WRJ is not a proper defendant in the above action.

**2.    Official-Capacity Claims:**

In their Motion to Dismiss, the State Defendants argue that Defendant King should be dismissed because only an official capacity claim has been asserted against him. (Document Nos. 17 and 18.) State Defendants explain that Plaintiff has only asserted an official capacity claim against Defendant King because Plaintiff fails to assert any allegation of personal action by Defendant King. (Id.) Specifically, the State Defendants note that "Plaintiff does not assert that this Administrator personally acted in any way to violate his rights." (Id.) State Defendants note that "[a]llegations have been made against the doctors, the nursing staff, and the unknown medical corp." (Id.) Accordingly, State Defendants claim that Defendant King is entitled to immunity. (Id.) Plaintiff did not file a Response to the State Defendants' Motion.

Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[2] See Will, supra, 491 U.S. at 66, 109 S.Ct. 2304. The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will, supra, 491 U.S. at 71, 109 S.Ct. at 2312. In Will, however, the Supreme Court held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." Id.; also see Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004)("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"). To the extent Plaintiff seeks monetary damages from Defendant King in his official capacity, the undersigned finds that Plaintiff's claims are barred by the Eleventh

---

[2] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Amendment and should be dismissed. To the extent, Plaintiff seeks prospective injunctive relief requiring Defendant King to provide him with immediate treatment by an "outside" doctor, such a request appears to be moot. The undisputed medical records reveal that an orthopedic consult was approved on April 13, 2017, and appointments with Dr. David Rupp at Marshall Orthopedics occurred on June 21, 2017, and September 19, 2017. (Document No. 29-1.)

**3.     Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[4] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau

---

[4] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a

prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative

11

remedies is a precondition to a federal prisoner filing a <u>Bivens</u> suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." <u>Custis v. Davis</u>, 851 F.3d. 358, 361 (4th Cir. 2017); <u>also see</u> <u>Banks v. Marquez</u>, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. The Unit Manager must respond to the inmate's Grievance within five business days. If the Unit Manager's response is unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. The Warden/Administrator must respond to the appeal, in writing, within five working days. If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. If the Warden/Administrator's response is unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. The Commissioner must respond to the appeal within ten working days. The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. The entire process takes about 60 days to complete. If prison officials fail to timely answer the grievance, the

inmate may treat the non-response as a denial and proceed to the next level of review.

All Defendants have filed a Motion requesting dismissal of Plaintiff's Section 1983 claim based upon Plaintiff's failure to exhaust. (Document No. 16, pp. 3 – 6 and Document No. 18, pp. 8 – 9.) Defendants, however, have failed to provide the Court with any affidavits or documentation supporting their claim that Plaintiff failed to exhaust his administrative remedies. Defendants instead argue that the face of Plaintiff's Complaint reveals that Plaintiff did not fully exhaust his available administrative remedies. In his Complaint, Plaintiff alleges that he engaged in the administrative remedy process by "complain[ing] that [he] was not receiving proper medical care and could not walk." (Id.) Plaintiff states the result of his grievance/complaint was "no response." (Id.) Although the face of the Complaint indicates that Plaintiff failed to exhaust his administrative remedies, the undersigned finds that it is not *apparent* from the face of the Complaint that Plaintiff failed to exhaust his available administrative remedies. See Custis, 851 F.3d, 361-62(stating that it is a rare instance where failure to exhaust is apparent on the face of the complaint). In Custis, the Fourth Circuit noted that an inmate's statement that he attempted to exhaust "may equally imply that he attempted, but could not, exhaust his administrative remedies – and thus, that he exhausted all remedies that were available to him." Id. Due to the limited record available to the Court, the undersigned finds it would be premature to dismiss Plaintiff's Complaint for failure to exhaust. To the extent Defendants request dismissal for failure to exhaust, the undersigned respectfully recommends that the District Court deny Defendant PrimeCare Medical's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 15) and State Defendants' "Motion to Dismiss" (Document No. 17).

4.      **Eighth Amendment**:

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently

14

serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'"
Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375,
1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir.
1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental
injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth
Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim
involves a condition which places an inmate at substantial risk of serious harm, usually loss of life
or permanent disability, or a condition for which lack of treatment causes continuous severe pain.
Id.; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 *1st Cir. 1990)("A
medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment,
or that is so obvious that even a lay person would easily recognize the necessity for a doctor's
attention."); Morales Felicciano v. Calderson Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A
constitutional violation is . . . established when government officials show deliberate indifference
to thos medical needs which have been diagnosed as mandating treatment, conditions which
obviously require medication attention, conditions which significantly affect an individual's daily
life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth
Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990),
as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

16

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical

consequences.

Plaintiff generally alleges that Defendants acted with deliberate indifference in providing treatment for his knee infection. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, a condition for which lack of treatment causes continuous severe pain or significantly affects an individual's daily life activities, or a condition diagnosed as mandating treatment or obviously requiring medical attention. Plaintiff alleges that his condition caused continuous pain and suffering and the inability to walk. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's knee condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to provide appropriate and timely treatment for his knee infection. The undisputed evidence reveals that Plaintiff first reported his complaints of a suspected blood clot in his leg to medical staff on February 28, 2017. (Document No. 27, p. 1.) Plaintiff was examined by LPN Kristin Turner, who noted redness to the inner right thigh that was warm and tender to the touch. (Id.) LPN Turner telephoned Dr. Humayun Rashid, who ordered antibiotics (Leviquin 50 mgs) daily for seven days and ordered Plaintiff to be housed in the medical unit. (Id.) Additionally, a follow-up with the in-house doctor was scheduled for the following day (March 1, 2017). (Id.) As scheduled, Plaintiff was evaluated by Dr. David Nicholas on March 1, 2017. (Id., p. 2.) Dr. Nicholas ordered an ultrasound of Plaintiff's leg to rule out deep vein thrombosis ("DVT"). (Id.)

The ultrasound results revealed no evidence of DVT. (Id., p. 3.) On March 6, 2017, Plaintiff was examined by Dr. Dominque Wong. (Id., p. 4.) Plaintiff advised Dr. Wong that the redness and swelling of his thigh had improved with the antibiotics. (Id.) Plaintiff further advised that he had a history of suffering knee infections and had undergone a surgery in the past to improve the condition. (Id.) Dr. Wong examined Plaintiff, noting swelling and effusion of the right knee, no fever, no excess warmth, and no erythema. (Id.) Dr. Wong's assessment was that Plaintiff was suffering from swelling to the knee with a history of septic joint, but no other evidence of an infection. (Id.) Dr. Wong noted that he was unsure if Plaintiff's condition was "chronic intermittent swelling post surgery vs acute." (Id.) Dr. Wong ordered labs and an x-ray and directed staff to obtain Plaintiff's prior medical records. (Id.) Dr. Wong further directed that Plaintiff return for a follow-up in two days, or that Plaintiff be sent out to an outside hospital if the condition worsened. (Id.) Plaintiff x-ray was performed on the same day (March 6, 2017), indicating "stable post-surgical changes and degenerative arthritis in the right knee with no acute fracture or dislocation." (Document No. 29-1, p. 11.)

As directed, Dr. Wong saw Plaintiff for a follow-up appointment on March 8, 2017. (Document No. 27, p. 4.) Plaintiff reported that he was "completely back to baseline and doesn't want followed anymore for same." (Id.) Dr. Wong examined Plaintiff noting no erythema or excess warmth. (Id.) Dr. Wong, however, noted that Plaintiff's lab results and prior "outside" records were not yet available. (Id.) Dr. Wong diagnosed Plaintiff with chronic knee pain and resolved cellulitis[1]. (Id.) Dr. Wong directed Plaintiff to complete his antibiotics for cellulitis and approved Plaintiff to return to his regular cell. (Id.) Later the same day, Plaintiff submitted a sick call request stating the following: "The infection is lodged in my knee. I need more antibiotics. [I] don't want

---

[1] Cellulitis is a bacterial skin infection.

18

to have to go back to medical. [I] need to get at least two weeks of antibiotics please." (<u>Id.</u>, p. 5.) Plaintiff was evaluated by Dr. Nicholas on March 20, 2017. (<u>Id.</u>, p. 6.) Plaintiff complained of knee pain and some swelling. (<u>Id.</u>) Dr. Nicholas ordered lab tests and an ultrasound to rule out a DVT. (<u>Id.</u>) Dr. Nicholas noted that a request for an orthopedic consult would be submitted if Plaintiff's lab tests were abnormal, (<u>Id.</u>) Dr. Nicholas finally noted that Plaintiff's complaints were not high suspicious of DVT and determined no need to house Plaintiff in the medical unit. (<u>Id.</u>) The next day, on March 21, 2017, Plaintiff submitted a sick call request stating as follows: "I was told I was going to an outside Dr. for my knee and I am worried about going and I need my pain meds back." (<u>Id.</u>, p. 7.)

On March 23, 2017, FNP Angela Nicholson evaluated Plaintiff for his chronic care visit. (<u>Id.</u>, p. 6.) Plaintiff's DVT, cardiac, and knee pain were addressed. (<u>Id.</u>) Specifically, FNP Nicholson noted that Plaintiff was taking xarelto for his history of DVT. (<u>Id.</u>) FNP Nicholson noted that Plaintiff's right knee pain is being followed by Dr. Nicholas, who had ordered labs, completed an ultrasound, and ordered an orthopedic consult. (<u>Id.</u>) FNP Nicholson directed Plaintiff to follow-up with chronic care in 90 days and to continue his medications. (<u>Id.</u>) FNP Nicholson noted that medical was awaiting an orthopedic consult. (<u>Id.</u>) The orthopedic consult was approved on April 13, 2017, and medical staff scheduled Plaintiff an appointment with Marshall Orthopedics. (Document No. 16, p. 7, Document No. 29, and Document No. 29-1.) On June 21, 2017, Plaintiff was evaluated by Dr. David Rupp at Marshall Orthopedics. (Document No. 29-1, pp. 7 - 10.) Plaintiff complained of right knee pain, grinding and popping. (<u>Id.</u>, p. 7.) Plaintiff further noted his history of swelling and infection in the knee and having to have his knee drained in the past. (<u>Id.</u>) Dr. Rupp examined Plaintiff and diagnosed him with primary osteoarthritis of the right knee. (<u>Id.</u>, pp. 8 – 9.) Dr. Rupp prescribed medication (Diciofenac) and home exercises. (<u>Id.</u>, p. 9.)

Plaintiff was instructed to follow-up in four to six weeks. (Id., p. 10.) On September 19, 2017, Plaintiff was transported to Marshall Health for his follow-up appointment with Dr. Rubb. (Id., pp. 3 - 6.) Plaintiff reported decreased swelling, but no change in the pain. (Id., p. 3.) Plaintiff reported improvement with his medication, but stated that the "ran out of the medication" and requested a refill. (Id.) Dr. Rupp again examined Plaintiff noting "no gross deformity erythema, or effusion. (Id., p. 4.) Dr. Rupp noted "grinding with [range of motion] testing." (Id.) Dr. Rupp administered an injected of 12 mg of Colostone and 3 ml of 1% Lidocaine in Plaintiff's right knee. (Id., p. 5.) Dr. Rupp renewed Plaintiff's medication and instructed Plaintiff to continue home exercises and apply ice as needed. (Id., p. 6.) Dr. Rupp further instructed Plaintiff to follow up on an as-needed basis. (Id.)

The Court finds that Defendants did not act with deliberate indifference in providing medical treatment regarding Plaintiff's leg/knee condition. The undisputed evidence reveals that medical staff evaluated Plaintiff and provided treatment following each sick-call request. Medical staff consistently evaluated Plaintiff's condition, ordered ultrasounds and x-rays, prescribed antibiotics, referred Plaintiff to an orthotics specialist, and prescribed over-the-counter pain medications. Additionally, Plaintiff was initially housed in the medical unit until medical staff confirmed that his condition was not caused by a blood clot and that his symptoms were improving. Although Plaintiff was not provided with the additional antibiotics that he requested, the undisputed evidence reveals that Plaintiff was consistently evaluated for signs of a DVT and infection. Thus, the record indicates that Dr. Nicholas denied Plaintiff's request for additional antibiotics after examining Plaintiff and obtaining lab tests. The undisputed evidence further reveals that Plaintiff was referred to an outside orthopedic approximately six weeks after he first complained of leg/knee pain and the outside appointment occurred approximately two months

20

later. The undersigned, therefore, finds no evidence that Defendants knowingly disregarded Plaintiff's need for treatment. Plaintiff appears to simply disagree with the appropriate course of treatment. An inmate's disagreement with his medical care or the course of treatment is insufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Based upon the undisputed facts, the undersigned finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's condition. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

**5.    Medical Negligence:**

Finally, Defendant PrimeCare argues that to the extent Plaintiff is asserting a medical malpractice claim, such a claim should be dismissed because Plaintiff failed to comply with the prerequisites of the MPLA. (Document No. 16, pp. 9 – 11.) Plaintiff failed to file a Response disputing the foregoing.

Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath

21

by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6. If a plaintiff has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the plaintiff must comply with the provisions of W. Va. Code § 55-7B-6(b) "except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim." W. Va. Code 55-7B-6(d). Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c). If a plaintiff proceeds under this subsection, the Plaintiff must "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. Id.

As stated above, Plaintiff has filed no Response disputing that he failed to comply with the prerequisites of the MPLA. Additionally, there is no indication that Plaintiff has complied with the prerequisites of the MPLA. Plaintiff further does not claim that he has filed a statement in lieu of a screening certificate of merit because his cause of action is based upon an well established legal theory of liability. The undersigned, therefore, recommends that the PrimeCare's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT in part and DENY in part** Defendant PrimeCare Medical's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 15), **GRANT in part and DENY in part** Defendants Western Regional Jail and Timothy King's "Motion to Dismiss" (Document No. 17), and remove this matter from the Court's docket. Specifically, the undersigned recommends that Defendant PrimeCare's "Motion to Dismiss Complaint and Alternative Motion for Summary Judgment" (Document No. 15) be denied as to its argument that Plaintiff failed to exhaust his administrative remedies and granted as to its arguments that Plaintiff failed to allege a viable Eighth Amendment claim and failed to comply with the prerequisites of the MPLA. The undersigned recommends that Defendant Western Regional Jail and King's "Motion to Dismiss" (Document No. 17) be denied as to their argument that Plaintiff failed to exhaust and granted as to their arguments that Plaintiff's claim was barred by the Eleventh Amendment and Plaintiff's Complaint failed to state a constitutional claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 8, 2018.

Omar J. Aboulhosn
United States Magistrate Judge